425 A.2d 1100

**COMMONWEALTH of Pennsylvania**

**v.**

**Walter LOWENBERG, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 24, 1980.

Decided Feb. 9, 1981.

John H. Corbett, Jr., and David G. Metinko, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Deputy Dist. Atty., Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## ORDER

PER CURIAM.

The Court being equally divided, the order of the Court of Common Pleas of Allegheny County is affirmed.

NIX, J., files an Opinion in Support of Affirmance in which FLAHERTY and KAUFFMAN, JJ., join.

FLAHERTY, J., files an Opinion in Support of Affirmance in which NIX and KAUFFMAN, JJ., join.

ROBERTS, J., files an Opinion in Support of Reversal in which O'BRIEN, C. J., and LARSEN, J., join.

## OPINION IN SUPPORT OF AFFIRMANCE

NIX, Justice.

Appellant had a counselled direct appeal to this Court in which the admissibility of his confession was carefully scrutinized and found to have been proper. *Commonwealth v. Lowenberg*, 481 Pa. 244, 392 A.2d 1274 (1978). After the filing of a *pro se* petition for relief under the Post Conviction Hearing Act,[1] counsel was appointed to represent appellant in those proceedings. That counsel concluded in his considered judgment that prior counsel had been effective and that the record did not reflect reversible error.[2] While this should have satisfied even the most scrupulous guardian of the rights of a defendant, the Opinion in Support of Reversal does not agree.

The Opinion in Support of Reversal concludes that postconviction counsel was ineffective. The basis for this startling conclusion is that he did not uncover some dereliction on the part of his predecessor. Significantly, the Opinion in Support of Reversal has not pointed to a single error in the trial or a legitimate objection that was overlooked. Instead, it condemns PCHA counsel for not raising an objection although the Opinion in Support of Reversal does not demonstrate an error in counsel's conclusion that there was no claim of merit to raise.[3]

1. Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.* (Supp.1979).

2. Prior counsel represented appellant at trial and on direct appeal.

3. To argue that counsel cannot properly assess the stewardship of prior counsel without reading every word of the transcript regardless how voluminous, is absurd. Certainly the mere appointment of new counsel to represent the defendant in a post conviction proceeding is not sufficient. Pursuant to that appointment, new counsel must

Implicitly, the Opinion in Support of Reversal seeks to support its result in this case upon the teaching of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In *Anders*, the United States Supreme Court, mindful of the obligation to afford equal justice to an indigent appellant, concluded that court-appointed appellate counsel in the *first* direct appeal from a criminal conviction must be shown to have in fact been an active advocate and not just an amicus curiae. The rationale for this conclusion was since a person with means would have the right of an appeal, even though the claims may be without merit, that same right should be afforded the indigent appellant.

Without commenting upon the wisdom of this judgment (we are bound under the Supremacy Clause [4] to follow that holding), I do think it imperative to note that, that holding was limited to the first direct appeal from a criminal conviction. In this case, we are concerned not with a direct appeal, but a collateral attack under a state statutory provision. To suggest that a person with means might be able to frustrate the purpose requires that we permit all defendants the right to misuse this statutory scheme for relief is clearly a *non sequitur*. The sound jurisprudential way of eliminating abuse of process is not to provide the opportunity for that abuse to all equally but, rather, to eradicate it completely.

FLAHERTY and KAUFFMAN, JJ., join in this opinion.

"discharge the responsibilities required by his representation." *Commonwealth v. Fiero*, 462 Pa. 409, 413, 341 A.2d 448 (1975). However, we cannot presume the ineffectiveness of subsequent counsel simply because he concedes that prior counsel was not ineffective. Such a result would be tantamount to concluding that a conviction must necessarily reflect the inadequacy of counsel.

4. U.S. Constitution, Art. VI, Cl. 2.

236

## OPINION IN SUPPORT OF AFFIRMANCE

FLAHERTY, Justice.

█ The Post Conviction Hearing Act [*1] was not intended to eliminate the finality of criminal convictions by allowing defendants to invoke an endless series of collateral proceedings. Convictions must achieve, at a reasonable time, the status of finality. Appellant's P.C.H.A. petitions assert, in an ineffectiveness context, underlying claims of error which are not of such an *exceptional nature* as to warrant an opportunity for consideration beyond an initial P.C.H.A. proceeding. This conclusion rests, as explained in my authored dissent in *Commonwealth v. Watlington*, 491 Pa. 241, 246, 420 A.2d 431, 437 (1980), on appellant's failure to assert a "colorable due process claim significantly implicating the truth determining process, which, were it unaddressed by the Court, could have the effect of imprisoning an *innocent* person." The conviction in the instant case was based upon overwhelming evidence which included, *inter alia, repeated full confessions* which have already been finally determined by this Court to have been admissible. *Commonwealth v. Lowenberg*, 481 Pa. 244, 392 A.2d 1274 (1978). By denying appellant an opportunity for further P.C.H.A. hearings, no significant risk would be created of imprisoning an *innocent* person.

NIX and KAUFFMAN, JJ., join this opinion.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

Appellant Walter Lowenberg appeals from an order of the Court of Common Pleas of Allegheny County dismissing, without a hearing, his second petition for relief under the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 1 et seq., 19 P.S. § 1180–1 et seq. (Supp.1979). Under the standards enunciated in *Anders v. California*, 386

[*1.] Act of January 25, 1966 P.L. (1965) 1580, § 1 et seq., 19 P.S. § 1180–1 et seq. (Supp.1979).

U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), *Commonwealth v. Sangricco*, 490 Pa. 126, 415 A.2d 65 (1980), and *Commonwealth v. Baker*, 429 Pa. 209, 239 A.2d 201 (1968), it is clear that appellant did not receive effective assistance of counsel in presenting his claims in either of his post-conviction petitions. Thus, the order of the PCHA court should be vacated and the case remanded for a counselled evidentiary hearing.

On March 10, 1976, appellant, then sixteen years old, was found guilty by a jury of murder of the third degree and sentenced to a term of ten to twenty years of imprisonment. Appellant's privately retained trial counsel filed and argued post-trial motions on his behalf, and, upon their denial, an appeal was taken to this Court. The issues raised in that appeal included the admissibility of an incriminating statement made by appellant and the legality of his arrest.[1] A majority of this Court rejected appellant's contentions and affirmed his conviction. 481 Pa. 244, 392 A.2d 1274 (1978).

Appellant then filed a pro se petition for relief under the Post Conviction Hearing Act (PCHA) and requested that counsel be appointed to assist him in presenting his claims. An attorney from the Office of the Public Defender of Allegheny County was accordingly appointed to represent appellant in the proceedings. Counsel made no attempt to amend appellant's inarticulately drawn petition or to file a brief in support of his claims. He did, however, appear at the March 29, 1979, evidentiary hearing. At that hearing the assistant district attorney argued that all of appellant's contentions had been either finally litigated or waived through trial counsel's failure to raise them in post-trial motions. Appellant's counsel then responded:

"... Mr. Zunich [assistant district attorney] and I have had a couple of conferences or discussions, whatever, in

1. Contrary to the assertion of the Opinion of Mr. Justice Flaherty, appellant was *not* convicted on the basis of "repeated full confessions," but rather on the basis of a single incriminating statement, whose voluntariness he challenged, and circumstantial evidence. See *Commonwealth v. Lowenberg*, 481 Pa. 244, 250, 392 A.2d 1274, 1277 (1978).

regard to this matter and I feel constrained to agree with him. I have gone over each one of these allegations of Mr. Lowenberg with him in as much detail as possible and explained to him all these matters could have been raised in a motion for new trial on appeal, they were not.

Secondly, even had they been raised, odds are that his argument would not have prevailed, the testimony [that] was introduced was valid anyway. . . .

So that even if these allegations were true, the court would not have ruled otherwise [than] to say this was all proper procedure.

And then the third thing that I explained to him, even if these arguments were true that they were not, it would have been harmless error because the critical thing in his case was his own admission, volunteered that he killed this woman. And these other matters, although [they] may have assisted in a finding of guilt, his guilt was based largely on that admission and that was ruled on by the Supreme Court of Pennsylvania.

So I asked him if there was anything other [that] he wanted to add to this, any amplification, any amendment, that sort of thing. He told me he does not have any amendments, does not have anything else.

\* \* \* \* \* \* \*

Mr. Zunich: The record should reflect [that appellant's counsel] as well reviewed the entire transcript of these proceedings, have you not?

[Appellant's Counsel]: The transcript itself, I did not. I did not go over. I went over some of it with Mr. Lowenberg. Points that he raised up while, I didn't read it in its entirety, no." (PCHA Hearing Transcript at 5–7.)

Appellant's counsel then called appellant to the bar and elicited a series of monosyllabic responses from him in confirmation of the above remarks. He concluded his representation of appellant with the following observation:

"I want to add one more thing. All the post conviction petitions that I reviewed and have come to court on, I want to say I think Mr. Lowenberg was ably represented

in his case, as well represented as anyone could be. Say that in person." (PCHA Hearing Transcript at 9).

The court subsequently denied appellant's petition in its entirety. No appeal was taken.

On September 10, 1979, appellant filed a second vague and illiterate pro se petition for relief under the Post Conviction Hearing Act. In this petition appellant claimed, as he had on direct appeal, that his incriminatory statement should not have been admitted at trial. He also set forth, for the first time, a claim of ineffective assistance of trial counsel. On October 2, in response to appellant's request, counsel from the Allegheny County Public Defender's office was again appointed to represent him. On October 29, the Commonwealth filed an answer to appellant's petition and moved to dismiss it on the grounds that the admissibility of appellant's statement had been finally litigated on direct appeal and that appellant's claim of ineffective assistance of trial counsel had been waived by his failure to raise it at his first PCHA hearing. On November 12, without conducting an evidentiary hearing, the court denied appellant's petition for the reasons advanced in the Commonwealth's motion to dismiss. The record is silent as to what assistance, if any, was afforded to appellant by his second public defender counsel. It is clear, however, that although appellant could have requested and received leave to amend at any time prior to the denial of his petition, at no time before or after the Commonwealth's motion to dismiss did appellant's public defender counsel either seek to amend the petition or file a brief in support of appellant's claims.

With the assistance of a third public defender counsel, appellant now brings this appeal from the summary denial of his second petition, claiming that if he had been afforded a hearing, he could have raised the issue of ineffective assistance of his first public defender counsel, a claim which he could not have raised in any prior proceeding.

The failure of appellant's second PCHA counsel to render him any visible assistance bears a sad and striking resemblance to the inactivity of counsel in *Commonwealth v.*

240

*Sangricco,* supra, *Commonwealth v. Scott,* 469 Pa. 381, 366 A.2d 225 (1976), and *Commonwealth v. Fiero,* 462 Pa. 409, 341 A.2d 448 (1975). In *Sangricco* this Court stated:

"Nothing in PCHA practice is more settled than the rule that a person seeking post-conviction relief is entitled to the assistance of counsel. Pa.R.Crim.Proc. 1503(a); *Commonwealth v. McClinton,* 488 Pa. 598, 413 A.2d 386 (1980); *Commonwealth v. Patterson,* 470 Pa. 618, 369 A.2d 1163 (1977); *Commonwealth v. Bradley,* 470 Pa. 602, 369 A.2d 1155 (1977); *Commonwealth v. Blair,* 470 Pa. 598, 369 A.2d 1153 (1977); *Commonwealth v. Triplett,* 467 Pa. 510, 359 A.2d 392 (1976); *Commonwealth v. Adams,* 465 Pa. 389, 350 A.2d 820 (1976). This rule serves more than to protect the petitioning party's rights. As Commentary to the American Bar Association's Standards Relating to the Administration of Criminal Justice points out,

'[i]t is a waste of judicial manpower and an inefficient method of treating the substantive merits of applications for post-conviction relief to proceed without counsel for applicants. Exploration of the legal grounds for complaint, investigation of the underlying facts, and more articulate statement of the claims are functions of an advocate; it is inappropriate for a judge, or for court staff, to undertake such work.'

Postconviction Remedies Std. 22–4.3 Commentary at p. 19 (Tent. Draft, 1978). See *Commonwealth v. Mitchell,* 427 Pa. 395, 235 A.2d 148 (1967).

Moreover, it is not enough simply for the PCHA court to appoint counsel. For this settled rule

'also envisions that counsel so appointed shall have the opportunity and in fact discharge the responsibilities required by his representation.'

*Commonwealth v. Fiero,* 462 Pa. 409, 413, 341 A.2d 448, 450 (1975). Thus in *Fiero* this Court held that appointed counsel's failure either to amend a pro se petition or to argue and brief the petitioner's pro se claims deprived the petitioner 'the opportunity of legally trained counsel to advance his position in acceptable legal terms.' Id. See also *Commonwealth v. Scott,* 469 Pa. 381, 366 A.2d 225

(1976) (PCHA petitioner 'uncounselled' where appointed counsel failed to amend 'inarticulately drawn' pro se petition)." (Footnote omitted.)

490 Pa. at 126, 415 A.2d at 68. Under these standards, it is clear that appellant was uncounselled in presenting his second PCHA petition.

Although a PCHA court may on occasion dispose of an uncounselled petition without a hearing, such a disposition

"is permitted only 'when a previous petition involving the same issue or issues has been finally determined adversely to the petitioner and he . . . was represented by counsel in proceedings thereon.' Pa.R.Crim.P. 1504. See *Commonwealth v. Smith*, 459 Pa. 583, 330 A.2d 851 (1975); *Commonwealth v. Haynes*, 234 Pa.Super. 556, 340 A.2d 462 (1975)."

*Commonwealth v. Adams*, supra, 465 Pa. at 391, 350 A.2d at 821–22. See also *Commonwealth v. Sangricco*, supra; *Commonwealth v. Triplett*, supra; *Commonwealth v. Schmidt*, 436 Pa. 139, 259 A.2d 460 (1969); *Commonwealth v. Minnick*, 436 Pa. 42, 258 A.2d 515 (1969). The PCHA court's dismissal of that portion of appellant's petition dealing with the admissibility of his incriminating statement falls within the above exception, since the issue was "finally determined adversely to petitioner" on direct appeal. Appellant's claim of ineffective assistance of trial counsel, however, should not have been summarily dismissed, for, having never previously been raised, it was, of course, never resolved against him. As this Court stated in *Commonwealth v. Minnick*, supra, 436 Pa. at 44–45, 258 A.2d at 516:

"Whatever may be the merits on the question of waiver here, a hearing court cannot summarily dispose of a petition, without counsel, on the ground of waiver. Our rules provide for summary disposition only in cases where the issue has been determined against the petitioner, not where it has been waived because of petitioner's failure to raise the question for a determination.

The reasons for this rule are quite simple. The question of waiver is often a complicated legal one. There may be

'extraordinary circumstances' which will justify petitioner's failure to raise the issue. See Post Conviction Hearing Act § 4(b)(2)."

Here, such "extraordinary circumstances" clearly exist: the assistance afforded to appellant at his first PCHA hearing, the first proceeding at which he could have raised this claim,[2] falls far below the standards for effective representation set forth by the Supreme Court in *Anders v. California*, supra, and by this Court in *Commonwealth v. Baker*, supra.

In *Anders*, the United States Supreme Court held that "[t]he constitutional requirement of substantial equality and fair play can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae*." 386 U.S. at 744, 87 S.Ct. at 1400. Here, as manifestly displayed by the portions of the PCHA hearing transcript previously quoted, the role of appellant's first PCHA counsel might more aptly be characterized as that of assistant to the prosecutor. Before the hearing he neither amended appellant's inarticulate petition nor filed a brief in support of appellant's claims. At the hearing, he began by stating that he felt "constrained to agree" with the assistant district attorney's assessment of the issues raised in appellant's petition. He then stated that he had told appellant that his claims as to matters not previously litigated had been waived through trial counsel's failure to raise them on direct appeal. Rather than amending appellant's petition to allege a claim of ineffective assistance of counsel for failing to raise these issues, appellant's appointed counsel usurped the function of the hearing court and opined that these omissions were "harmless error," concluding his testimony with the gratuitous expression of his belief that appellant was "ably represented in his case." Moreover, he admitted, to the surprise of the assistant district attorney,

2. Appellant was represented on direct appeal by his trial counsel, who could not realistically be expected to have argued his own ineffectiveness. See, e. g., *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975).

that his conclusions and advice were based on only a partial reading of the transcript of appellant's case. Such representation can hardly be called "advocacy." Indeed, it does not even begin to approach the constitutional standard of effective appellate representation announced by the Supreme Court in *Anders.*

In this Court's decision in *Commonwealth v. Baker,* supra, we described the courses of action available to counsel who, like appellant's first PCHA counsel, believe their clients' petitions to be meritless:

"The Supreme Court of the United States has recognized in *Anders* that even the most diligent court appointed counsel may sometimes justifiably believe that he is being asked to pursue an appeal totally devoid of merit. However, because it is also fundamental to the notion of equal justice for all that the indigent defendant receive just as spirited a defense as the man who can retain private counsel, the Supreme Court has set forth very strict standards, now applicable to the states, which counsel and the appellate court *must* follow before an attorney may be permitted to withdraw his services. *Anders* gives to counsel two choices when representing an indigent client on appeal. He may, of course, file briefs and argue the case. But *Anders* emphasizes, throughout the Court's opinion, that the brief must be that of an advocate, not an *amicus curiae.* 386 U.S. at 741, 87 S.Ct. at 1398–99. Or counsel may choose to withdraw his services, in which case this procedure must be followed: '[I]f counsel finds his [the client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses . . . .' 386 U.S. at 744, 87 S.Ct. at 1400."

429 Pa. at 211–12, 239 A.2d at 202.

The belief of appellant's counsel, after an inadequate and admittedly incomplete examination of the record, that appel-

lant was ably represented at trial and on direct appeal does not permit him to argue against his client's interests at the post-conviction hearing.

"Appointed counsel is of course not required to accept a client's view by asserting points his good conscience would reject even at the loss of a handsome fee. At the same time, counsel cannot file a brief against his client. It is one thing for a prisoner to be told that appointed counsel sees no way to help him, and quite another for him to feel sandbagged when the counsel appointed by one arm of the Government seems to be helping another to seal his doom."

*Suggs v. United States*, 391 F.2d 971, 974 (D.C.Cir.1968); accord, *Commonwealth v. Jones*, 451 Pa. 69, 301 A.2d 811 (1973).

As appellant's first PCHA counsel should certainly have recognized, if appellant wished to raise in his petition claims of error that had not been preserved by his former counsel in post-trial motions or on direct appeal, it was essential that he allege former counsel's ineffectiveness or be deemed to have waived all such claims. If, after a *thorough* review of the record, PCHA counsel felt in good conscience that all of appellant's claims, including the claim of ineffective assistance, were meritless, he should have petitioned to withdraw, after satisfying his duty to his client and the court by pursuing the following course of action: (1) explaining his views to appellant; (2) setting forth in an amended petition, in acceptable, intelligible legal terms, those claims which appellant wished to advance, as well as any additional claims, such as ineffective assistance of counsel, necessary to the effective presentation of appellant's primary claims; (3) informing appellant of his right to proceed *in propria persona* and, to that end, providing him with a copy of the properly articulated amended petition.

If appellant's counsel had followed these steps, the PCHA court could have addressed the merits of all of appellant's claims, including his claim of ineffective assistance of counsel, in a single proceeding, and appellant would not have had

to resort to further proceedings in order to present claims which should have been decided at his first post-conviction hearing. Indeed, if appellant's claim of ineffective assistance had been decided against him after the hearing, appellant would then properly be deemed to have waived any claims which could have been raised in post-trial motions or on direct appeal.[3] It is clear that these minimal, yet valuable, requirements for effective post-conviction counsel provide a far less Draconian means of achieving the desired goal of finality than does the elimination of *any* standard for effective assistance in these proceedings, which Justices Nix and Flaherty appear to advocate in their Opinions in Support of Affirmance. Unlike the solutions proposed in those opinions, these requirements would serve not only to reduce the burden of repeated post-conviction petitions and hearings upon our judiciary but also to foster and preserve respect for the value of our adversary system of justice in the eyes of both defendants and the rest of society.

Although Mr. Justice Flaherty would summarily dismiss appellant's claims as "unexceptional," it is clearly not our duty at this point to speculate on the possible merit, if any, of appellant's claims. That task should be undertaken initially by the PCHA hearing court, "but only *after* it has had a chance to review the facts and applicable law as presented by an *advocate*." *Commonwealth v. Baker*, 429 Pa. at 214, 239 A.2d at 203 (emphasis in original). Indeed, it may well be that, after a thorough examination of the record by effective counsel, appellant will discover new and specific claims to raise. In any event, he will be able to present his

---

**3.** This point applies equally to appellant's second PCHA counsel, who should have realized that appellant's belated claim of ineffective assistance of trial and appellate counsel was vital to the preservation of his other claims and thus should have been raised by appellant's first PCHA counsel. If appellant's second PCHA counsel also regarded all of appellant's claims as meritless, he should nonetheless have amended appellant's petition to allege the ineffectiveness of all prior counsel, followed the remaining steps described above, and then petitioned to withdraw, thus obviating the need for this appeal. We reiterate, however, that none of this would have been necessary if appellant's first PCHA counsel had himself performed the minimal advocate's role.

appeal in appropriate form, free from the inarticulateness and technical defects which have hampered his earlier, unassisted efforts.

The merit or frivolousness of a petitioner's claim bears no relation to his indigency or wealth. Guided by the fundamental principle of equal justice under law, our Legislature has guaranteed to indigent petitioners the assistance of counsel in post-conviction proceedings. We cannot remain faithful to that principle and sit idly by when appointed counsel fails utterly to fulfill the duties of an advocate. As this Court observed even before the Supreme Court's decision in *Anders*, "[h]ad appellant the funds with which to retain counsel, we do not doubt that he would have been able to indulge his grievances, real or fanciful, on appeal. Appellant [an indigent] was entitled to no less." *Commonwealth ex rel. Cunningham v. Maroney*, 421 Pa. 157, 160–61, 218 A.2d 811, 813 (1966).

The order of the PCHA court should therefore be vacated and the record remanded for counselled proceedings.

O'BRIEN, C. J., and LARSEN, J., join this Opinion in Support of Reversal.